UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KENNY L. PATTERSON,

                    Plaintiff,

v.                                              Civil No. 2:22cv451

UNITED PARCEL SERVICE, INC.,

                    Defendant.

<u>OPINION AND ORDER</u>

This matter is before the Court on the motion of Defendant United Parcel Service, Inc. ("UPS"), to dismiss Plaintiff Kenny L. Patterson's Third Amended Complaint. ECF No. 30. The Court finds that the facts and legal questions are adequately presented in the motions and subsequent briefs and that a hearing would not aid in the decisional process.[1] <u>See</u> Fed. R. Civ. P. 78(b); Local Civ. R. 7(J). For the reasons explained herein, UPS's motion to dismiss is **GRANTED in part** and **DENIED in part**.

I. FACTUAL BACKGROUND[2]

Plaintiff, who was born in 1967, began his tenure at UPS in 1998. ECF No. 29 ("Compl.") ¶¶ 3, 5. In 2003, he became a full-time package truck driver. <u>Id.</u> ¶ 5.

_____

[1] Neither party requested oral argument. <u>See</u> ECF No. 34.

[2] The allegations detailed here are taken from the Third Amended Complaint. ECF No. 29. They do not represent factual findings by the Court.

On October 7, 2019, Plaintiff underwent an open-heart surgery. Id. ¶ 7. In January 2020, after a three-month recovery, Plaintiff resumed driving full-time. Id. ¶¶ 7, 11. But Plaintiff's "permanent" heart condition prevented him from working "without a reasonable accommodation."[3] Id. ¶¶ 8-9. After Plaintiff informed his supervisor of the difficulties he was facing, he was permitted "to work light duty jobs" from January 6 to January 26, 2020. Id. ¶¶ 12, 14. Then, on January 27, 2020, a "supervisor told Plaintiff that he could no longer permit Plaintiff to work" and that Plaintiff "would need to be 'properly disqualified as a driver to move to working inside'" the UPS facility. Id. ¶¶ 15-16. Still, Plaintiff "continued to perform light duty alternative work" until March 12, 2020. Id. ¶ 17. Though Plaintiff's doctors had "released him" to resume unrestricted driving in February 2020, his "heart doctor" then "put Plaintiff out of work" to prevent "exposure to Covid following open heart surgery."[4] ECF No. 35, at 1 (amending Compl. ¶ 21).

About one year later, by mid-February 2021, "Plaintiff's heart condition was under control," but his vision had begun to

---

[3] Plaintiff's cardiologist later diagnosed him with tachycardia, "which caused his new and increased driving difficulties." Compl. ¶¶ 25-26.

[4] After the instant motion had been briefed, Plaintiff moved to amend one paragraph of the Third Amended Complaint, which the Court permitted. ECF Nos. 35, 36. The amendment struck an allegation that "Defendant unilaterally removed Plaintiff from work [on] March 12, 2020," Compl. ¶ 21, and instead attributed this removal to "Plaintiff's heart doctor." ECF No. 35.

fail "as a side effect of his heart condition." Compl. ¶ 27. On July 7, 2021, Plaintiff's ophthalmologist told Plaintiff "he could only work daylight hours because of his vision limitations." Id. ¶ 32. Although "there were plenty of daylight hours available for Plaintiff to complete his driving duties," Plaintiff's UPS supervisor indicated on September 20, 2021, that he could not accommodate such a limitation. Id. ¶ 33. Instead, Plaintiff was advised that he could apply for the "ADA Program," under which Plaintiff "would be restricted to work inside the building" in lieu of his first choice, daylight driving. Id. ¶¶ 38-39.

When Plaintiff initially pursued this ADA Program, UPS claimed to have placed him "on a six-month waiting list" for "inside" openings. Id. ¶ 40. But on December 10, 2021, UPS told Plaintiff that only those with "permanent disabilities" (which Plaintiff did not claim) could participate in the ADA Program, and that participation would require Plaintiff to forfeit "full-time status, seniority, full-time pension benefits, and his then hourly rate of pay." Id. ¶¶ 41-42, 46. UPS also rebuffed Plaintiff's request to "work inside the building as a disqualified driver," a position UPS contended "was only available to drivers if they were recovering from an on-the-job injury or illness." Id. ¶¶ 45, 49. Despite UPS's contention, it was Plaintiff's view that "there were many employees who worked inside the building" on whom such

3

restrictions were not imposed - including Plaintiff himself, when he worked inside in January 2020.   Id. ¶¶ 50-52.

On December 13, 2021, "[o]ut of frustration with [UPS's] inconsistent statements," Plaintiff withdrew his ADA Program application.[5]   Id. ¶ 53.   In January 2022, when Plaintiff repeated his request to drive only during daylight hours or to work inside, UPS once again refused.   Id. ¶¶ 55-56.

## II. PROCEDURAL HISTORY

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge on February 10, 2022, in which he alleged that UPS had "denied [his] ability to come back to work until [he] could work at 100 percent and for 10 hours a day"; refused to offer him a "light duty" position despite offering such posts to others "who cannot drive, especially younger personnel"; and "denied [his request for] a reasonable accommodation" and "subjected [him] to different terms and conditions . . . because of [his] age."   ECF No. 17-2, at 2.   All of this, the charge particulars concluded, was "in violation of the Age Discrimination in Employment Act [("ADEA")] of 1967, as amended," and "the American[s] with Disabilities Act [("ADA")] of 1990, as amended."   Id.

---

[5] Plaintiff learned on April 30, 2022, that UPS "had posted multiple open jobs" at the UPS center where Plaintiff sought to work.   Compl. ¶ 57. But when Plaintiff complained about this to UPS in May 2022, UPS claimed to have no continuing obligation to search for a reasonable accommodation for Plaintiff "once he declined the ADA program."   Id. ¶ 58.

4

In a response dated June 27, 2022, UPS acknowledged Plaintiff's allegations of "disability and age discrimination" but denied that Plaintiff "was discriminated against based on his disability or that [UPS] retaliated against him in violation of" the ADA "or any other law." ECF No. 17-3, at 1. UPS asked the EEOC to "dismiss the charge with a 'no cause' finding." Id.

On August 3, 2022, the EEOC issued a letter dismissing the charge without any merits-finding and notifying Plaintiff of his right to sue. See ECF No. 5-1, at 1. Plaintiff initiated the instant lawsuit in October 2022, when he submitted a proposed complaint pro se. ECF No. 1-1. On March 29, 2023, the Court granted Plaintiff's application for in forma pauperis status and directed the Clerk to file the proposed complaint. ECF No. 2, at 1. However, finding that the proposed complaint "fail[ed] to allege facts sufficient to state a plausible claim for relief . . . under the ADEA or the ADA," the Court ordered Plaintiff to show cause "why this action should not be dismissed by filing an Amended Complaint." Id. at 2. An Amended Complaint and several supplementary submissions followed, ECF Nos. 3, 4, 6, 7, prompting the Court to order a second amendment, see ECF No. 8.

On November 1, 2024, Plaintiff, still proceeding pro se, filed his Second Amended Complaint, which he had prepared with the assistance of counsel. ECF No. 17. UPS moved to dismiss on May 12, 2025. ECF No. 25. A few weeks later, on May 30, 2025,

Plaintiff - now represented by counsel - filed a third amended complaint, which contains four counts: (I) failure to accommodate, (II) discrimination, and (III) retaliation, all under the ADA, plus (IV) discrimination under the ADEA.  ECF No. 29.  UPS then filed the instant motion to dismiss.  ECF No. 30.

In its motion, UPS posits two grounds for the dismissal of Plaintiff's claims with prejudice.  First, UPS contends that Plaintiff's ADA and ADEA claims impermissibly rest on "allegations that either were not raised in his EEOC charge or fall outside the applicable 300-day limitations period."  ECF No. 30, at 1.  Second, UPS argues that the complaint neither "plead[s] the necessary elements" of such claims nor "allege[s] sufficient facts" to support them.  Id. at 1-2.

### III. LEGAL STANDARDS

#### A. Failure to Exhaust Administrative Remedies

Before filing suit under the ADA or the ADEA, "a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC."  Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. §§ 2000e-5, 12117(a)) (ADA); Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022) (ADEA).  If the plaintiff has initiated "proceedings with a State or local agency with authority to grant or seek relief from [the alleged unlawful employment] practice," then the plaintiff's EEOC charge must be filed "within three hundred days after the alleged unlawful

6

employment practice occurred."[6]  42 U.S.C. § 2000e-5(e)(1); see 29 U.S.C. § 626(d).

Even if a plaintiff timely files an EEOC charge, that plaintiff will have "fail[ed] to exhaust his administrative remedies" if "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Sydnor, 681 F.3d at 593 (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005)). However, when the allegations in a complaint "reasonably relate[]" to the preceding EEOC charge "and can be expected to follow from a reasonable administrative investigation," the exhaustion requirement is satisfied. Id. at 594 (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)).

**B. Failure to State a Claim Upon Which Relief Can Be Granted**

If a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it cannot "survive a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (construing Fed. R. Civ. P. 8(a)(2)); Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019); Fed. R. Civ. P. 12(b)(6). While this "plausibility standard is

---

[6] A 180-day EEOC filing period applies if no such state filing is made. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). But Plaintiff's charge indicates that it was also filed with the state, ECF No. 17-2, at 1-2, and UPS appears to concede that the 300-day period applies. See ECF No. 31, at 1-2 (UPS invoking "the 300-day statute of limitations").

not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice. Id. (citing Twombly, 550 U.S. at 555).

Still, to determine the legal sufficiency of a complaint under this standard, the Court does not resolve factual disputes or demand evidentiary proof. Instead, the Court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiff." Turner, 930 F.3d at 644; see Lattinville-Pace v. Intelligent Waves LLC, No. 22-1144, 2024 WL 1756167, at *2 (4th Cir. Apr. 24, 2024) (explaining that "a plaintiff need not forecast evidence sufficient to prove a claim" at the pleading stage (quoting Harbourt v. PPE Casino Resorts Md., LLC, 820 F.3d 655, 658 (4th Cir. 2016))).

## IV. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

UPS first asserts that Plaintiff's alleged failures to exhaust his administrative remedies "bar [Plaintiff's ADA and ADEA] claims and warrant dismissal for lack of subject matter jurisdiction." ECF No. 30, at 1. To begin, the statutory "charge-filing requirement is a processing rule . . . not a jurisdictional

8

prescription." Fort Bend Cnty. v. Davis, 587 U.S. 541, 551 (2019). Furthermore, where (as here) a plaintiff has filed a charge, administrative exhaustion is evaluated on a claim-by-claim basis; only claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred." Chacko, 429 F.3d at 509 (citation omitted). In other words, a failure to exhaust a particular allegation or claim will not necessarily doom an entire suit. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

UPS's exhaustion argument focuses on Plaintiff's removal from work on March 12, 2020. See ECF No. 33, at 3 ("The charge is . . . untimely as to the March 2020 event."). In this limited regard, UPS is correct. Because Plaintiff's February 10, 2022, EEOC charge was filed more than 300 days after March 12, 2020, any removal on that date may not be "considered for the purposes of liability." Morgan, 536 U.S. at 114.[7]

But it does not follow that Plaintiff's charge "cannot support any ADA or ADEA claim," as UPS further contends. ECF No. 33, at 3 (emphasis added). "The existence of past acts and the employee's

---

[7] Plaintiff may still use UPS's "prior acts as background evidence in support of a timely claim." Morgan, 536 U.S. at 113 (citation omitted). That said, Plaintiff appears already to have abandoned any effort to invoke his March 2020 removal against UPS, either as background evidence or as an independent basis of liability. See supra note 4.

prior knowledge of their occurrence" do not preclude a plaintiff-employee from "filing charges about related discrete acts" if those "acts are independently discriminatory and charges addressing those acts are themselves timely filed." Morgan, 536 U.S. at 113.

Without even mentioning any March 2020 removal, Plaintiff's EEOC charge invoked both his disability and his age and alleged denials of reasonable accommodation and "disparate treatment" that occurred on or after July 12, 2021, during the 300-day period preceding his charge.[8] ECF No. 17-2, at 2. The content of Plaintiff's timely EEOC charge is thus "reasonably related" to the "central factual allegations" and claims for relief in Plaintiff's complaint. Sydnor, 681 F.3d at 593-94 (citations omitted). Accordingly, UPS's motion to dismiss on failure-to-exhaust grounds is **DENIED**.

## B. Failure to State a Claim Upon Which Relief Can Be Granted

In addition to its exhaustion challenge, UPS contends that "Plaintiff does not plead the necessary elements to support claims for failure to accommodate, disparate treatment, or retaliation under the ADA, nor does he allege sufficient facts to support a claim of age discrimination under the ADEA." ECF No. 30, at 1-2.

---

[8] UPS notes in passing that "Plaintiff's charge . . . fails to specifically bring a retaliation claim." ECF No. 31, at 2. But the retaliation claim is "reasonably related" to Plaintiff's charge and could have been "developed by reasonable investigation" thereof, so it "may be maintained" here. Stewart v. Iancu, 912 F.3d 693, 705-06 (4th Cir. 2019) (quoting Chacko, 429 F.3d at 505-06); Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).

The Court addresses the sufficiency of Plaintiff's pleadings with respect to each claim in turn. As noted, the question at this stage is whether Plaintiff has alleged "sufficient factual matter, accepted as true," to state a facially plausible claim to relief. Iqbal, 556 U.S. at 677-78 (emphasis added).

### 1. Failure to Accommodate Under the ADA

The ADA prohibits employers from "failing to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" Lashley v. Spartanburg Methodist Coll., 66 F.4th 168, 178 (4th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)). As the parties agree, "to establish a prima facie case against his employer for failure to accommodate under the ADA," Plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that [UPS] had notice of his disability; (3) that with reasonable accommodation [Plaintiff] could perform the essential functions of the position; and (4) that [UPS] refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (cleaned up); see also Lashley, 66 F.4th at 178 (similar).

UPS mounts no real challenge to the sufficiency of Plaintiff's pleadings vis-à-vis the first and second of the foregoing elements. See ECF No. 31, at 7-8. More to the point, Plaintiff adequately

11

and plausibly alleges each of them.  See, e.g., Compl. ¶¶ 30-38.
UPS's challenge instead sounds in the third and fourth elements.

There too, however, Plaintiff's complaint passes muster.
Plaintiff alleges that he "repeatedly sought two reasonable
accommodations to no avail": "to return to work inside the building
or drive only during daylight hours." Compl. ¶¶ 78, 82. According
to his complaint, Plaintiff "consistently started driving after
daylight commenced and returned to work well before dark, even
when this was not medically necessary." Id. ¶ 34. Indeed, he
allegedly could "uniformly complete what was supposedly ten hours
of assigned work in eight hours." Id. ¶ 35. Plaintiff also
alleges that "inside" positions were available for him to fill,
even though Defendant offered "numerous conflicting reasons" why
Plaintiff could not be given such a position. Id. ¶¶ 48-52, 82.
Whether or not these allegations are ultimately to be believed,
they are not so conclusory that the Court is free to discredit
them at the pleading stage. Taken as true, they suffice to state
an ADA failure-to-accommodate claim.

UPS's efforts to refute or circumvent Plaintiff's allegations
are likewise unavailing at the pleading stage. UPS first argues
that Plaintiff's proposed accommodations were unreasonable. ECF
No. 31, at 8. As a general rule, whether a given accommodation is
reasonable is a question of fact. Reyazuddin v. Montgomery Cnty.,
789 F.3d 407, 416 (4th Cir. 2015). Such factual "contests" are

not properly resolved on a motion to dismiss. _See_ _King v._ _Rubenstein_, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But here, UPS maintains, Plaintiff's proposed accommodations are "unreasonable as a matter of law" because they "would have required UPS to override seniority rights and displace other employees in violation of the" Collective Bargaining Agreement ("CBA"). ECF No. 33, at 3; _see_ _US Airways, Inc. v. Barnett_, 535 U.S. 391, 394 (2002) ("[T]o show that a requested accommodation conflicts with the rules of a seniority system is ordinarily to show that the accommodation is not 'reasonable.'").

    In support of this argument, UPS invites the Court to consider the terms of the CBA in question. _See_ ECF No. 31, at 8-9 & n.3. To be sure, even at the motion-to-dismiss stage, a court may under certain conditions properly credit a "contract's description of the defendant's duties . . . over the plaintiff's contrary characterization" in his complaint. _Goines v. Valley Cmty. Servs._ _Bd._, 822 F.3d 159, 166-67 (4th Cir. 2016). But this is not a breach-of-contract case; the terms of the CBA are not necessarily dispositive of Plaintiff's statutory claims. In addition to alleging that "the Union contract authorize[d]" at least one of his proposed accommodations, Compl. ¶ 51, Plaintiff has also alleged that UPS has previously deviated from the contract's terms, _see_ _id._ ¶¶ 51, 85-91. Such an allegation permits a reasonable inference that Plaintiff could eventually "show[] special

13

circumstances that make an exception from the seniority system reasonable in th[is] particular case." Barnett, 535 U.S. at 405-06 ("The plaintiff might show that the system already contains exceptions such that . . . one further exception is unlikely to matter."). At the very least, the allegations in the complaint do not "foreclose[]" Plaintiff's "potential [response]" to UPS's CBA arguments. L.N.P. v. Kijakazi, 64 F.4th 577, 586 (4th Cir. 2023).

UPS further contends that Plaintiff, by withdrawing from UPS's internal "ADA Program," "failed to engage in the interactive process" to identify a reasonable accommodation. ECF No. 31, at 10 (cleaned up). In so arguing, UPS appears to conflate its "ADA Program" – the precise contours of which are not presently before the Court – with the "interactive process" that the ADA has been understood to require. Kelly v. Town of Abingdon, 90 F.4th 158, 166 (4th Cir. 2024) ("ADA regulations contemplate that the employer will pursue an 'informal, interactive process' with its disabled employees." (citation omitted)); cf. Tarquinio v. Johns Hopkins Univ. Applied Physics Lab, 141 F.4th 568, 575 (4th Cir. 2025) ("[T]he interactive process is a means, not an end.").

Even assuming UPS's ADA Program would have constituted a satisfactory "interactive process" here, it is "doubt[ful] that an employer has a complete defense whenever it can pin blame for a breakdown in that process on an employee." Tarquinio, 141 F.4th at 574. Nor can UPS pin such blame on Plaintiff at this stage,

given that Plaintiff's complaint attributes his withdrawal from the ADA Program to "frustration with [UPS's] inconsistent statements." Compl. ¶ 53; see Tarquinio, 141 F.4th at 574. Here again, because the dispute is one of fact, it is "not capable of resolution at the motion to dismiss stage." O'Reilly v. Bd. of Child Care of United Methodist Church, Inc., No. 20cv570, 2020 WL 5913242, at *4 (D. Md. Oct. 6, 2020).

In short, because Plaintiff "plausibly alleges the required elements," and since UPS's "objections are factual in nature," id., UPS's motion to dismiss Plaintiff's ADA failure-to-accommodate claim is **DENIED**.

### 2. ADA Discrimination

The ADA also prohibits disability discrimination in the form of "disparate treatment." Sturgill v. Norfolk S. Ry. Co., 391 F. Supp. 3d 598, 602-03 (E.D. Va. 2019); 42 U.S.C. § 12112(a) (prohibiting discrimination "on the basis of disability"). To prevail on such a claim, Plaintiff will need to prove that (1) he has a disability, (2) he is a "qualified individual," and (3) UPS took some "adverse employment action" against him "because of his disability."[9] Id. at 603 (citation omitted); Jacobs v. N.C. Admin.

---

[9] In cases of disability discrimination in the form of wrongful discharge, the Fourth Circuit has set forth the requisite elements somewhat differently. See Kelly, 90 F.4th at 169 (citation omitted). But in those cases, too, the crux of the inquiry remains whether the plaintiff has "allege[d] that his disability was a 'but-for' cause of" the adverse action, "rais[ing] a reasonable inference of disability discrimination." Id.

*Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). That Plaintiff has alleged the first of these elements is, as already noted, uncontroversial. UPS does, however, challenge the sufficiency of Plaintiff's allegations as to the second and third elements.

A "qualified individual" is one who, "with or without reasonable accommodation, . . . can perform the essential functions of the employment position" at issue. *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686-87 (4th Cir. 1997) (quoting 42 U.S.C. § 12111(8)). In UPS's view, "it is apparent from the face of Plaintiff's Complaint that he could not perform the essential functions of the Driver position - specifically, he could not complete his full delivery route or drive at night." ECF No. 33, at 5. But Plaintiff specifically avers that "there were plenty of daylight hours available for Plaintiff to complete his driving duties," consistent with Plaintiff's broader allegation that he "could uniformly complete what was supposedly ten hours of assigned work in eight hours." Compl. ¶¶ 33-36. While UPS may ultimately disprove these allegations, they adequately allege Plaintiff's "qualified individual" status for purposes of the instant motion.[10]

As to the third element, UPS argues that "Plaintiff has not alleged any facts plausibly suggesting that his disability was the

---

[10] UPS also argues that "whether Plaintiff could perform the essential functions of the job as governed by the CBA is a question that can be resolved as a matter of law." ECF No. 33, at 5. This argument fails for the reasons already articulated in the Court's earlier CBA discussion.

16

but-for cause of the adverse actions he challenges." ECF No. 31, at 11. But that is not the case. Plaintiff's allegations, taken together and accepted as true, do permit the "reasonable inference" that UPS "was motivated by his disability." Kelly, 90 F.4th at 169-70. Notably, Plaintiff alleges that UPS's "incorrect and misleading statements" left him "no alternative but to withdraw his ADA Program application." Compl. ¶¶ 53-54; see Kelly, 90 F.4th at 170 ("[A]n employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination." (quoting Sheng v. M&TBank Corp., 848 F.3d 78, 86-87 (2d Cir. 2017))). Plaintiff also alleges that his treatment differed from that of other drivers, such as those who suffered "on-the-job injuries or illnesses." Compl. ¶¶ 81-90, 94; see Kelly, 90 F.4th at 170-71 (suggesting that differential treatment would "raise an inference of discrimination").

"Whatever may happen at summary judgment or trial," such allegations and the reasonable inferences they allow are sufficient to state an ADA discrimination claim at this stage. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005); Pickering v. Virginia State Police, 59 F. Supp. 3d 742, 748 (E.D. Va. 2014) ("Defendants may assert non-discriminatory reasons . . . on a motion for summary judgment."). Accordingly, UPS's motion to dismiss Plaintiff's ADA discrimination claim is **DENIED**.

17

### 3. ADA Retaliation

The ADA further prohibits employers from "discriminat[ing] against any individual because such individual . . . made a charge" of an ADA violation. Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) (quoting 42 U.S.C. § 12203(a)). To state an ADA retaliation claim, Plaintiff must allege that UPS "subjected [him] to adverse consequences in response to [his] complaint of discrimination" or other protected activity. Kelly, 90 F.4th at 170 (citation omitted); see Jacobs, 780 F.3d at 577 (requiring a plaintiff claiming retaliation to "show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her").

Both an EEOC charge and a request for accommodation are protected activities. See Jordan v. Sch. Bd., 640 F. Supp. 3d 431, 445 (E.D. Va. 2022) (citations omitted). UPS admits that Plaintiff has adequately alleged that he engaged in such activities. ECF No. 31, at 11. But, UPS contends, Plaintiff "fails to plausibly allege that these protected activities are connected to any adverse employment action." Id.

To satisfy the adverse-action requirement, Plaintiff's complaint points to UPS's "failure to accommodate." Compl. ¶ 139; see id. ¶ 93 ("When Plaintiff asked for various reasonable accommodations . . . Defendant retaliated against him by continuing to deny him reasonable and available accommodations.").

18

But it is far from clear that a failure to accommodate may doubly serve as an adverse action from which a retaliation claim may arise.  See Floyd v. Lee, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) (rejecting such a theory); Leckie v. Bd. of Educ., No. 23cv299, 2023 WL 8809310, at *8 (D. Md. Dec. 19, 2023) (same); White v. Buckeye Fire Equip. Co., No. 3:17cv404, 2018 WL 2304048, at *6 (W.D.N.C. May 21, 2018) (same).  But see Katz v. U.S. Dep't of Just., No. 1:20cv554, 2021 WL 3809034, at *12 & n.20 (E.D. Va. Aug. 26, 2021) (accepting a failure to accommodate as an adverse action for a retaliation claim).  At the least, where a failure to accommodate is posited "as an act of retaliation," a plaintiff "must allege a 'protected activity' other than the request for accommodation" itself, lest the discrimination and retaliation claims be "entirely conflate[d]."[11]  Anderson v. Sch. Bd., No. 3:18cv745, 2020 WL 2832475, at *19 n.34 (E.D. Va. May 29, 2020).

Here, Plaintiff alleges "retaliation that occurred between March 2022 and August 2022 because Plaintiff filed his initial Charge" in February 2022.  Compl. ¶ 116.  The only adverse action

---

[11] Only actions "serious enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination'" are "cognizable adverse actions in the retaliation context."  Herkert v. Bisignano, 151 F.4th 157, 165-66 (4th Cir. 2025) (citations omitted).  The prospect of denial is inherent in any request; such a denial, without more, does not qualify.  In this case, for instance, far from dissuading Plaintiff from filing his EEOC charge, UPS's alleged failures to accommodate actually spurred him.  See Compl. ¶ 66; cf. Wilson v. Montgomery Cnty. Bd. of Trs., No. 17cv2784, 2018 WL 4300498, at *9 (D. Md. Sept. 10, 2018) ("[A] denial is likely to prompt — not dissuade — an employee to file an administrative claim.").

during this period to be gleaned from the complaint is, again, UPS's alleged failure to accommodate.[12]  See id. ¶¶ 57-59. Notwithstanding UPS's alleged awareness of the charge and the relative "temporal proximity" between the charge and these subsequent failures to accommodate, Plaintiff's allegations do not "support an inference" that UPS failed to accommodate Plaintiff "'because' of" Plaintiff's EEOC charge. Holloway v. Maryland, 32 F.4th 293, 300 (4th Cir. 2022); see Staley v. Gruenberg, 575 F. App'x 153, 156 (4th Cir. 2014) ("[T]his temporal proximity alone is not sufficient to establish that . . . protected activity was a 'but for' cause." (citation omitted)).  That is because the series of failures to accommodate of which Plaintiff complains "began before" the EEOC charge, fatally undermining any plausible inference that UPS's failure to accommodate was "motivated by" the charge.  Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 309 (4th Cir. 2006); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

---

[12] Plaintiff argues that UPS also took adverse action against him by "falsely stating they had no jobs for him" and "sending him home without his normal pay and benefits," ECF No. 32, at 15, but these were simply corollaries to the alleged failure to accommodate.

Plaintiff does not plausibly allege the "necessary causal link" between his protected activity and any adverse action. Kelly, 90 F.4th at 170 (citation omitted). Accordingly, the Court **GRANTS** UPS's motion to dismiss Plaintiff's ADA retaliation claim.

### 4. ADEA Discrimination

In addition to his three ADA claims, Plaintiff alleges a claim of discrimination under the ADEA, which "prohibits employers from . . . discriminating against any person who is at least 40 years of age 'because of' the person's age." E.E.O.C. v. Baltimore Cnty., 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). To state such a claim, Plaintiff must adequately allege that he was "(1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020).

Plaintiff alleges that "another individual, substantially younger than Plaintiff . . . was allowed to work inside the building until his condition resolved and permitted him to return to his normal driving position." Compl. ¶¶ 88-90. Plaintiff also asserts that UPS "replaced [him] with a substantially younger individual without any apparent disability." Compl. ¶ 94.

These allegations may be "consistent with age discrimination," but they are too spare to "give rise to a reasonable inference of age-based discrimination." Tickles, 805 F. App'x at 208 (emphasis added); see also, e.g., Laber v. Austin,

No. 1:22cv145, 2023 WL 2579466, at *7 (E.D. Va. Mar. 20, 2023) (finding a complaint "completely devoid of facts" to support an inference of age discrimination, notwithstanding the plaintiff's allegation that he was "significantly older than the selectee"); Tittle v. Petro, No. 24cv3061, 2025 WL 1920936, at *7 (D. Md. July 11, 2025) (deeming insufficient a plaintiff's "general" allegations that "substantially younger co-workers" were treated differently, where the plaintiff "identified no facts that would support the conclusion that [the younger employees] were similarly situated to a sufficient degree as to support an inference of age discrimination").

In this case, though Plaintiff refers in conclusory terms to "substantially younger" individuals who allegedly replaced him or enjoyed preferential treatment, Compl. ¶¶ 88-90, 94, he "does not make any allegations as to the[ir] specific ages." Laber, 2023 WL 2579466, at *7. Nor does Plaintiff allege that these other individuals were "less qualified." Lattinville-Pace, 2024 WL 1756167, at *3 (citation omitted).

"Without such details," the Court is "left with mere speculation." Tickles, 805 F. App'x at 208. Because Plaintiff fails to allege facts sufficient to plausibly state a viable age-discrimination claim, UPS's motion to dismiss that claim is GRANTED.

22

## V. CONCLUSION

For the reasons set forth above, UPS's motion to dismiss, ECF No. 30, is **GRANTED in part** and **DENIED in part**. Counts III and IV of Plaintiff's Third Amended Complaint, ECF No. 29, as amended, see ECF Nos. 35-36, are **DISMISSED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 26 , 2026

23